IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CLIFTON LEMANUEL JOHNSON,

        Petitioner,

v.                                          Civil Action No. 3:09cv32
                                           Criminal Action No. 3:08cr60
                                           (Judge Bailey)

UNITED STATES OF AMERICA,

        Respondent.

## REPORT AND RECOMMENDATION

### I. Introduction

On May 7, 2009, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.[1] The Government filed its response on July 14, 2009.[2] Petitioner filed his reply on August 19, 2009.[3]

### II. Facts

**A.**    **Conviction and Sentence**

On October 18, 2008, petitioner signed a plea agreement, agreeing to plead guilty to Count 1 of a one-count indictment, distribution of 6.1 grams of cocaine base, also known as "crack," in violation of Title 21, U.S.C. § 841(a)(1) and (b)(1)(B).[4] The maximum penalty for the offense being pled to was specified as imprisonment for a period of ten (10) years to life and a $4,000,000.00 fine

---

[1] Dkt.# 33.

[2] Dkt.# 43.

[3] Dkt.# 44.

[4] Dkt.# 24.

1

(Id. at 1 - 2). The parties stipulated and agreed that the total drug relevant conduct of petitioner was 6.1 grams of cocaine base, also known as "crack." (Id. at 4). In the plea agreement, the petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the agreement states:

> 10. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions heretofore made by the United States in this plea agreement, Defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus). The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided Defendant complies with the provisions of Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure.

(Id. at 4).

On October 27, 2008, the petitioner, then aged 30 and having completed the 11th grade,[5] entered his plea in open court. (Dkt.# 39 at 4). Petitioner testified that he could read, write and understand English and denied having taken any medication, drug or alcohol within the previous 24 hours. (Id. at 3 - 4). He testified that he had completed a residential drug treatment program ("R-DAP) while previously incarcerated in 2001. (Id. at 4). He denied any hearing impairment or other disability that would prevent his full participation in the hearing. (Id. at 4 - 5). During the plea hearing, the Assistant U.S. Attorney ("AUSA") read aloud in open court each paragraph of the plea agreement, including the paragraph 10 *supra*. (Id. at 6 - 9). The Court specifically asked petitioner if he understood the waiver of his appellate and post-conviction relief rights and petitioner replied

---

[5] Per petitioner's PreSentence Investigation Report ("PSR"), he has obtained a GED. (Dkt.# 30 at 2).

"Yes, sir." (Id. at 9 - 10). The Court then asked defense counsel whether she felt that petitioner understood the waiver of his appellate and habeas corpus relief rights and counsel said "I think he does, Your Honor. We have gone over it. And as you may have gleaned from his comment that he was in the R-DAP Program, he has been through this process before, so he's familiar with the rights that he is waiving and the pros and cons of taking a plea." (Id. at 10). The Court asked petitioner whether he and his counsel had reviewed the plea agreement in detail before he signed it, and petitioner stated that they had. (Id.). The Court informed petitioner that the maximum sentence for the crime which he was pleading could be imprisonment for a period of ten years to life, and a term of at least eight years of supervised release (Id. at 12), but that the ultimate sentence could be greater than that estimated by his counsel; petitioner indicated that he understood. (Id. at 14). The Court specifically asked petitioner whether he understood that the length of his sentence could not be determined by anyone until the pre-sentence report (PSR) was completed and petitioner said "[y]es, sir." (Id. at 14 and 19). The Court then summarized the rights that petitioner was giving up by pleading guilty. (Id. at 15 -16). During the plea hearing, the Government proffered the evidence against petitioner that would be used if he went to trial, to establish a factual basis for the plea. (Id. at 17 - 18). Petitioner did not contest the factual basis for the plea.

After the factual basis for the plea was presented, the petitioner entered his plea. The Court asked petitioner if he was, in fact, guilty of Count One of the indictment and petitioner advised the Court that he was. (Id. at 18). The Court then asked petitioner if his lawyer had done a good job representing him and he responded "[y]es, sir." (Id. at 19). The Court further asked petitioner whether he thought that there was any thing he thought that his lawyer left undone, or anything that he thought his lawyer did improperly, and petitioner stated "[n]o, sir." (Id.). At the conclusion of

the hearing, the Court determined that petitioner was competent, that he had made his plea freely and voluntarily, with full understanding of its consequences, and that the elements of the crime in Count One had been established beyond a reasonable doubt. (Id. at 23). Petitioner did not object to the Court's finding.

On February 25, 2009, petitioner appeared before the court for sentencing. Petitioner was found to have a base offense level of 24 with a two-level reduction for acceptance of responsibility. (Dkt.# 40 at 6). An additional one-level reduction was granted, resulting in an adjusted and total offense level of 21. (Id.). With a criminal history category of III, the Court found that the sentence guidelines called for a mandatory minimum of 120 months imprisonment and at least eight years of supervised release. (Id.). The Court then heard argument from counsel. Petitioner's counsel voiced no substantive objections to the PSR but asked the Court for a sentence of "ten years, or even consider going below ten years[.]" (Id. at 9). The Government acknowledged petitioner's timely acceptance of responsibility but pointed out that he had consistently "refused to be debriefed by the officers, despite their repeated requests." (Id. at 9 - 10). The Government did recommend a sentence at the lowest end of the guideline. (Id. at 9). Taking all necessary information into consideration, the Court sentenced petitioner to serve a term of 120 months imprisonment (Id. at 10).

## B. <u>Direct Appeal</u>

Petitioner did not file a direct appeal.

## C. <u>Federal Habeas Corpus</u>

### <u>Petitioner's Contentions (Dkt.# 33)</u>

Petitioner raises only one ground in his § 2255 motion: an ineffective assistance of counsel claim based on his counsel's failure, at sentencing, to object to an incorrect mandatory minimum

4

sentence being imposed. He contends that pursuant to 21 U.S.C. § 841(b)(1)(B), he should have received "a flat 60 month sentence[.]" He concedes that counsel advised him "that this was justified due to a past drug conviction" but maintains that "in fact, Petitioner never should have had the mandatory minimum doubled. Attorney Weese was ineffective in not arguing to have Johnson's sentence reduced to the agreed upon 60 month mandatory minimum sentence." (Dkt.# 33 at 8).

Petitioner states that he did not bring this claim previously because he only "recently realized that he was sentenced to the wrong mandatory minimum." (Id. at 5).

### Government's Response (Dkt.# 43)

The Government contends that petitioner knowingly and voluntarily waived his right to bring a § 2255 motion, with some exception for certain ineffective assistance of counsel claims. Further, the Government argues, petitioner's claims have no factual or legal support, since petitioner was fully advised of the ten year mandatory minimum sentence before he entered his plea, both when he signed his plea agreement and again, during his Rule 11 colloquy at his plea hearing.

### Petitioner's Reply (Dkt.# 44)

Petitioner contends that "but for the unprepardness [sic] of attorney . . . Weese, concerning whether he should have plead guilty and the negotiation's [sic] leading up to the Government's filing of a Title 21 U.S.C. § 851, information to establish prior criminal conviction, he would have gone to trial." (Dkt# 44 at 1).

Petitioner requests an evidentiary hearing to prove that counsel waited until "some time in November to approach Petitioner with the advice to plead guilty to the ten-year mandatory minimum," after the Government's Information regarding his previous criminal conviction was already filed. He alleges that counsel was "incompetent in not attempting to negotiate the

5

withdrawal of the § 851 enhancement." (Id. at 2). A further purpose of the evidentiary hearing petitioner requests would be to "question [attorney] Weese on what offer was made by the Government before the October 15 enhancement filing." (Id. at 4).

**D.    Recommendation**

Based upon a review of the record, the undersigned recommends that petitioner's § 2255 motion be denied and dismissed from the docket because petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack his conviction. Further, petitioner's claim of ineffective assistance of counsel has no support in either fact or law.

### III. Analysis

**A.    Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

**B.    Waiver**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this

end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel ("IAC") claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea

agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641, 645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance

9

of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

The unpublished *per curiam* decision in United States v. Morris, 247 Fed. Appx. 459; 2007 U.S. App. LEXIS 21976 (2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights contained in the plea agreement and petitioner said that he did. (Dkt.# 39 at 9 - 10). Further, petitioner specifically testified that he understood that, incident to his plea agreement, he was waiving his right to appeal his sentence or to collaterally attack it, if it was within the statutory maximum of 120 months to life. (Id. at 12). His sentence was 120 months imprisonment. The undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly

and voluntarily waived the right to collaterally attack his sentence and to file this § 2255 motion, thus precluding a review of the merits of most of its claims.

However, a waiver analysis may not be dispositive of all of the issues in this petition. Although it appears that petitioner is attempting to evade his waiver by recharacterizing what is essentially a claim that the District Court misapplied the sentencing guidelines into a claim of ineffective assistance of counsel after the entry of the guilty plea, because it is so framed, it "falls outside" of the scope of the waiver. Accordingly, it will be given full review.

C.  **Ground One: Whether Counsel's Performance was Ineffective at Sentencing for Failing to Object to the Ten Year Mandatory Minium Sentence Petitioner Received.**

Petitioner contends that, at sentencing, counsel was ineffective for failing to object when he received a ten-year mandatory minimum sentence instead of the five-year one he feels he should have received.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985).

In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Here, petitioner contends that at sentencing, counsel failed to object when, pursuant to 21 U.S.C. § 841(b)(1)(B), instead of receiving the "agreed upon 60 month mandatory minimum sentence," (Dkt.# 33 at 8) he received a sentence of double that. In his reply to the Government's response, petitioner also avers that when the Government presented counsel with audio and video evidence of the drug buy, counsel failed to do "due diligence to ascertain if the individual on the audio/video surveillance was in fact Johnson." (Dkt.# 44 at 2). He also implies that his attorney was in collusion with the Government and "[a]s there was a prior conviction . . . [counsel] was only concerned with having him plead guilty to a ten year mandatory minimum." (Id.). He contends that had he known he would have received a 120-month sentence, he not have pled guilty but would have gone to trial.

Pursuant to the waiver of appellate and post-conviction relief rights in his plea agreement, petitioner validly waived the right to bring any claim of ineffective assistance of counsel occurring

prior to the entry of his guilty plea. Therefore, petitioner's reply claims that counsel: 1) failed to properly conduct plea agreement negotiations; 2) failed to properly investigate his case; and colluded with the Government in order to obtain his plea are all waived.

Petitioner was convicted of distribution of 6.1 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).[6]

21 U.S.C. § 841(a)(1) states:

> (a) Unlawful acts
> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally -
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]

21 U.S.C.§ 841(b)(1)(B) states, in pertinent part:

> Except as otherwise provided in section 849, 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:
>
> (B) In the case of a violation of subsection (a) of this section involving—
>
> (iii) 5 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;
>
> such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years[.] . . **If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment**[.]

21 U.S.C.§ 841(b)(1)(B) (emphasis added).

Petitioner's claim that he should receive the "agreed upon 60 month mandatory minimum sentence" and that counsel was ineffective for not objecting at sentencing when he did not, has no

---

[6] Because petitioner had a prior drug conviction for distribution of cocaine base, his penalty in the instant offense was enhanced pursuant to 21 USC § 841(b)(1)(B).

13

support in fact or law. Petitioner does not allege his attorney provided misadvice regarding his sentence and the undersigned can find no instance in the record where a sixty month sentence was ever mentioned, let alone "agreed upon." Petitioner's attempt to point to the statute of conviction that sets forth the penalty for the underlying offense fails; petitioner has cherry-picked the more-favorable first portion of 21 U.S.C. § 841(b)(1)(B), because it only requires a five-year penalty, while ignoring the portion that applies to those who, like himself, have a prior conviction for a drug felony offense. Petitioner's claim lacks merit; his §2255 motion even concedes his awareness that his prior felony drug conviction statutorily enhanced the sentence he would otherwise have received. Furthermore, his allegation that "[counsel] waited until sometime in November to approach Petitioner with the advice to plead guilty to the ten-year mandatory minimum" (Dkt.# 44 at 2) not only inadvertently reveals that petitioner knew full well that he was pleading to a ten-year mandatory minimum sentence at the time he pled, and not the five-year mandatory minimum he now claims was "agreed upon," but is also completely unsupported by the record. Petitioner does not claim he is innocent, only that he is entitled to receive half the sentence he actually got.

Petitioner signed his plea agreement on October 18, 2008, three days after the Government filed its Information to Establish Prior Conviction (Dkt.# 18), and approximately a month before the time he now alleges that counsel approached him with the advice to plead guilty. The plea agreement fully explained that the mandatory minimum to the charge was ten years; the five year penalty was never mentioned. Paragraph 2 of the plea agreement states:

> The maximum penalty to which defendant will be exposed by virtue of his plea of guilty, as stated in paragraph 1 above, is imprisonment for a period of ten (10) years to life, a fine of $4,000,000.00 and a term of at least eight (8) years of supervised release [21 USC 841(b)(1)(B)].

Dkt.# 24 at 1 - 2.

At his plea hearing, nine days after petitioner signed the plea agreement, paragraph 2, *supra*, was read aloud in open court by the AUSA. Further, this exchange was later had during the Rule 11 colloquy:

> THE COURT: Do you understand that the maximum penalty for any count in the indictment is imprisonment for a period of ten years to life, a fine of $4 Million, and a term of at least eight years of supervised release? Do you understand that that's the maximum penalty?
>
> THE DEFENDANT: Yes, sir.

Dkt.# 39 at 12.

Not only does petitioner's claim have no support in the law, the facts he alleges are not even supported by the record. Petitioner signed the plea agreement on October 18, 2008 and was not sentenced until February 25, 2009, over four months later. The plea agreement clearly stated that the minimum sentence he would receive was ten years. He entered his plea in open court after each and every paragraph of the plea agreement was read or summarized aloud. He then testified that: he and his counsel had reviewed the agreement before he signed it; he understood that his minimum sentence could be no more than ten years; that the sentence he received might be different than that estimated by his counsel; and that no one could predict the length of his sentence until the PSR was completed. Petitioner also said that he was completely satisfied with his counsel, that his lawyer had done a good job, had left nothing undone that he thought should have been done, nor had she done anything improperly.

"Representations of defendant, his lawyer, and prosecutor at plea hearing with respect to lack of promises influencing guilty plea constitute a formidable barrier in any subsequent collateral proceedings, since strong solemn declarations in open court carry a strong presumption of verity, and subsequent presentation of conclusory allegations unsupported by specifics is subject to summary

dismissal." Blackledge v. Allison, 431 U.S. 63, 73-74 (1974). Therefore, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992).

At the plea hearing, the petitioner stated that there were no agreements, verbal or otherwise, outside of the written plea agreement. It was not until after petitioner had been sentenced, and decided he was unhappy with his sentence, that he asserted he was sentenced to an "incorrect" mandatory minimum sentence that was not the "agreed upon" sentence he was promised. His claim that a different sentence was "agreed upon" is suitably vague; he does not identify who allegedly offered or promised this five-year sentence. The petitioner has not offered "clear and convincing evidence" which would call into question his statements made under oath during the plea colloquy. Nor has the petitioner provided sufficient evidence that any outside agreements existed. See Sutton v. United States, supra (petitioner must establish grounds by a preponderance of the evidence).

Furthermore, petitioner's claim that counsel was ineffective at the sentencing hearing for not arguing for a lesser penalty is belied by the record. The sentencing hearing transcript reveals that counsel did plead for petitioner to receive a sentence below the guideline mandatory minimum. She acknowledged the statutorily-mandated sentence enhancement for petitioner's prior drug conviction, but attempted to persuade the Court that petitioner's status as a convicted felon made obtaining legitimate employment impossible, and that his inability to support his child drove him to return to selling drugs. Simply because the Court ruled against counsel and gave petitioner a sentence within the guideline does not render counsel's performance defective. Counsel had no basis for objecting to a statutorily-mandated minimum sentence and thus cannot be found ineffective for failing to do

so. Petitioner's ten-year sentence is a result of his own criminal history, not because of anything that counsel did or failed to do.

Finally, it should be noted that, generally speaking, claims of error regarding application of the Guidelines cannot be raised in a habeas petition. United States v. Pregent, 190 F.3d 279, 283 - 84 (4th Cir. 1999); United States v. Mikalajunas, 186 F.3d 490, 495 - 96 (4th Cir. 1999). A claim not attacking the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979). Because an alleged misapplication of statutory sentencing requirements does not constitute a miscarriage of justice, Mikalajunas, *supra* at 495 (4th Cir. 1999), petitioner's claim is barred. See Stewart v. United States, 2006 U.S. Dist. LEXIS 54553 at *13-14 (E.D. Va. July 21, 2006).

Because petitioner wove his "error in application of sentencing guideline" claim into a claim of ineffective assistance of counsel, petitioner also has the burden of demonstrating counsel's deficient performance and how it prejudiced him. Because petitioner cannot establish the underlying claim, petitioner cannot establish that counsel was deficient or that petitioner was prejudiced by counsel's failure to challenge the issue. Furthermore, petitioner's claim, despite his attempt to recharacterize it as an ineffective assistance of counsel claim, is essentially a thinly-disguised attempt to evade his waiver of habeas relief rights by challenging his sentence or the manner in which it was determined. As such, it falls squarely within his waiver. Relief should be denied.

### IV. Recommendation

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion and granting the Government's motion to

dismiss, **DISMISSING this case with prejudice**.

Further, petitioner's request for an evidentiary hearing should be **DENIED** as moot.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to file timely objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: ~~August~~ NOVEMBER 1, 2010

/s/ *[signature]*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

18